FIRST SAVINGS BANK OF CRAWFORDSVILLE, Appellant, v. W. J. EDGAR, Appellee.

**FRAUD:** Deception Constituting—Waiver of Fraud Because of Nonreliance. Representations as to the character, quality, and value of land for which notes were executed become quite immaterial in an action on the notes, when it appears that the maker of the notes exercised his right (1) to later personally inspect the land, and (2) to substitute other lands for the lands first contracted for.

**BILLS AND NOTES:** Bona-Fide Purchasers—Waiver of Fraud and Collateral Agreement. One who executes a note for land purchased on false representation as to its character, quality, and value, and later renews the note in the hands of one claiming to be a holder in due course, and yet later *exercises* his contract right (1) to personally examine the land, and (2) to substitute other lands for the lands first contracted for, and thereupon takes the personal guaranty of another to buy back said latter lands within a named time, may not, in an action on the note, predicate fraud (a) either on the original false representations, or (b) on the false representation as to the financial responsibility of the guarantor. This is true because the original fraud was *not relied on,* and because the fraud pertaining to the guarantor is too remote.

**TRIAL:** Instructions—Assumption of Truth of Material Fact. Principle reaffirmed that reversible error results from assuming, in instructions, the truth of a material and disputed fact.

*Appeal from Washington District Court.*—CHARLES A. DEWEY, Judge.

JUNE 23, 1922.

ACTION upon a promissory note. Trial to a jury. Verdict and judgment for defendant. Plaintiff appeals.—*Reversed and remanded.*

*Livingston & Eicher,* for appellant.

*Morrison & Morrison, H. O. Weaver, Arthur Springer,* and *R. P. Howell,* for appellee.

PRESTON, J.—Plaintiff sued on two promissory notes of $2,000 each, signed by the defendant and executed October 17, 1918, due in twelve months. Plaintiff alleges that the notes were its property, and that they are unpaid. Wherefore it asks judgment.

The answer and plaintiff's reply thereto are very long, and are contained in 15 or 16 pages of the abstract. We shall condense as much as possible.

The substance of the answer is that, about September, 1918, one Robertson, the United States Farm Land Company, the Daniel Hayes Company, of Idaho, Daniel Hayes, Jr., Rogers, Courtner, S. P. Lalor, and others, entered into a conspiracy to cheat and defraud defendant and others, by procuring defendant and others, by means of false and fraudulent misrepresentations, to enter into contracts for the purchase of tracts of real estate near Chowchilla, California, the contract being set out; that, about October 1, 1918, plaintiff, by its officers, or at least one of them, joined in said conspiracy to cheat and defraud defendant and others in the vicinity of Crawfordsville, Iowa, by means of fraudulent misrepresentation concerning the quality and value of the California land and the financial condition and assets of the corporation known as the Daniel Hayes Company, of Idaho, and its financial responsibility; that, pursuant to the conspiracy, Lalor, Hayes, Jr., Rogers, Courtner, and plaintiff, by one of its officers, did make such false representations to de-

fendant, representing that the Hayes Company was a solvent corporation, worth a million and a half, able to comply with any of its contracts, that it owned large and valuable real estate in California and in Chicago, Illinois, and that the California lands were valuable agricultural lands, etc.; that defendant resides near Crawfordsville, Iowa, and was one of plaintiff's customers, and he relied upon it and its officers for advice in financial matters; that it was the local custom to deposit notes and valuable papers for safe-keeping in plaintiff's bank; that the said conspirators further represented to defendant that they had arranged that any of their notes would be taken as a part of any contract he might make, which, pursuant to such a custom, would be deposited with and left for safe-keeping with plaintiff bank until he examined and accepted the land to be purchased; that defendant relied on such statements, and was deceived thereby, and was induced to enter into and did enter into a contract with the Hayes Company, and signed a note for $4,000, placed in plaintiff's hands as such depository; that defendant thereupon notified plaintiff that said note was, by specific agreement, to be held by plaintiff until he had examined the land described in his contract, and accepted or rejected the same, and that, if he rejected the land, the note was to be returned to defendant by plaintiff; that thereupon plaintiff's cashier falsely represented to defendant that plaintiff had purchased the note, and was the holder thereof in due course; that later, and about November, 1918, the cashier representing to defendant that it would make no difference in his rights and liabilities, defendant signed two notes for $2,000 each, which defendant is informed are the notes in suit; that, under the contract, defendant made a personal examination of the land described therein, in January, 1919, with an officer of the Hayes Company, and upon such examination first learned that the land was worthless, and worth not to exceed $25 per acre for grazing purposes; that, upon the rejection of said land by defendant, defendant was shown other tracts of land in the same vicinity, and upon S. P. Lalor's falsely representing himself to be financially responsible, to wit, worth a quarter of a million dollars, defendant consented to a substitution of other land for the land

described in the contract, and the change was made in the contract, which correctly described the tract referred to in Exhibit B, attached to the answer, which is as follows:

> "Chowchilla, California,
> "February 1st, 1919.

"It is agreed by Mr. W. J. Edgar and S. P. Lalor that at the end of one year if Mr. W. J. Edgar is not satisfied with the land purchased by him in the Chowchilla district that S. P. Lalor agrees to buy said forty acres for the sum of $200.00 per acre plus 6 per cent, and said Lalor agrees upon the purchase of said land to pay said Edgar the money invested by Edgar in the improvement of the land plus 6 per cent interest should Edgar be willing to sell at that time.

> "W. J. Edgar,
> "S. P. Lalor,
> "Gerald Hayes."

Defendant further alleges that the Hayes Company had no title to said land, and it was incumbered for more than its cash value, and that the Hayes Company was insolvent at the time defendant signed said notes, and has been ever since; and that said company is unable to comply with the said contract, either before or after the same was modified, of which, and of the conspiracy and plaintiff's participation therein, defendant had no knowledge until long after the transactions; that plaintiff was never the holder in due course of the $4,000 note, which note was not complete and regular on its face, and was taken by plaintiff with full notice of the contract; that only by plaintiff's false representation as to its being a holder in due course, and by its fraudulent concealment of its participation in the conspiracy to defraud defendant, did plaintiff obtain defendant's signature to the two notes for $2,000 each, which he signed as aforesaid. A copy of the contract between the Hayes Company and defendant, is attached to the answer. Some of its provisions will be now referred to, and others will be noticed later in the opinion, if necessary. It is dated October 17, 1918, and

states that it is a contract for sale of land and a contract for improving and cropping, between the Hayes Company and defendant, and agrees to sell to defendant 40 acres of land for $8,000, $4,000 of which was paid in cash, and the balance of $4,000 on or before five years, to be evidenced by a note at 6 per cent, and a mortgage on the land. Defendant agreed, upon request of the company, to make application for and sign necessary papers to replace the mortgage given with a Federal farm loan for the same amount, at 5 per cent. The parties further agree to share in the cost of improving the land, sinking wells, pumping water for irrigating, taxes, and so on, up to a certain amount, the company to manage the farm. There were provisions for keeping books of account, showing receipts and disbursements, which are to be open for inspection of the purchaser; that the land is not to be sold for less than $400 per acre, and that, upon sale, the proceeds shall be divided in a certain way between the purchaser and the company; that purchaser has the option to occupy the land on certain terms; and further, that, the purchaser having made the agreement without first inspecting the property, the company agrees that, if the purchaser shall personally inspect it within 90 days, accompanied by an officer of the company, so that no mistake may be made as to the location of the tract, the purchaser may, at his option, if he is not satisfied with said tract, select any unsold lot of equal acreage and of equal price controlled by said company, in place thereof, or may, if he so elects, within seven days after completing such inspection, notify said company in writing, at its office in Chicago, that he is not satisfied with his purchase, and desires to have his money back, and the company will, within 90 days after receipt of such written notice, return to said purchaser all moneys or notes paid to them. It was further agreed that no promise, statements, or representations of any kind, unless reduced to writing and incorporated in the contract, should be considered and construed as binding on either party. It was further agreed and understood between the parties that for all purposes the contract should be considered and construed as two distinct transactions: one the purchase

and sale of the land; and the contract for the improving and cropping, another.

The plaintiff, for reply, among other things, admits and alleges that defendant executed a note, or notes, for $4,000; that plaintiff purchased the notes in due course from said land company and Lalor, and paid full consideration therefor, without any knowledge or notice of the terms and provisions of the contract, at the time of or prior to said purchase. It admits that plaintiff's cashier told defendant that the bank had purchased the note and was the holder thereof in due course, and alleges that such is the fact; admits that defendant thereafter executed and delivered to plaintiff the notes upon which this suit is brought, in payment and satisfaction of said note or notes above mentioned; admits that defendant made a trip to California, and personally examined the land and other tracts in the vicinity, and that defendant agreed to the change in the contract, and that defendant executed and accepted Exhibit B, before set out. In Count 2 of the reply, plaintiff says that, prior to the purchase of the original note, plaintiff's cashier told defendant that said notes had been offered to plaintiff for purchase, and defendant at that time told the cashier that it would be all right for plaintiff to purchase the notes, and that he would rather have them owned by a home bank than by strangers; that, relying on said statement, and without any knowledge of infirmities in or defenses to said notes, plaintiff purchased them and paid full value therefor; that, after such purchase, defendant came to plaintiff's place of business and executed and delivered the notes upon which this suit is based, in payment and satisfaction of the original note or notes; that afterward, and early in 1919, defendant, after inspecting other lands, substituted other lands in said contract, as alleged in defendant's answer, and after said modification of the contract, defendant accepted and approved of the same, and accepted as additional security thereto the contract and guaranty, Exhibit B, before referred to; that, after all these things had been done, defendant forwarded money to the land company, for the purpose of operating said land under the cropping provisions thereof; that, in the spring or summer of 1919, deed and cer-

tificate of abstract of title for the land described in the modified contract were tendered to defendant, and he refused to accept or settle for same; that, by reason of the matters alleged in defendant's answer and amendment thereto, and all the matters in this Count 2 of the reply, defendant has waived his right to defend against the payment of the notes upon which this suit is brought, and is estopped therefrom. On the same date that the reply was filed, plaintiff also filed the following:

"R. S. Dix has paid to Livingston & Eicher $80 paid to him by the Daniel Hayes Company on its sale of land to the defendant, W. J. Edgar, and Livingston & Eicher hereby tender same to defendant, and as attorneys for plaintiff ask and agree that defendant be given credit for said amount on claim of plaintiff in this action."

Dix was cashier of plaintiff bank, and the officer referred to as having to do with the transaction in question. Plaintiff claims that this was for money advanced or paid by defendant on improvements, while defendant calls it commission, or discount.

The errors assigned relate to rulings in admitting evidence in regard to the instructions, and especially Nos. 8, 11, and 18, in that, as appellant contends, the court told the jury, as a matter of law, and without qualification as to waiver and estoppel, that, if the original note was secured by fraud, then the defendant would have the same right of defense against the renewal notes as against the original note, disregarding, as we understand appellant's claim, the question of the substitution of other land in the contract, and as provided by the contract. Appellant also assigns as error that the court erred in submitting the case to the jury on the ground of fraud, for the reason that defendant does not raise the issue of fraud in his answer, the sole issue raised thereby being the issue of conspiracy. Appellant especially complains that the court failed to submit, or properly submit, the questions of estoppel and waiver pleaded by it. We shall not stop to notice all the points argued, since we reach the conclusion that the case must be reversed, and the matters may not be presented in the same way or have the same rulings on another trial. Conceding, for the purposes of the opinion, that defendant was defrauded, or rather, that as to that there was

a jury question, and that it was for the jury as to whether plaintiff was an innocent holder for value, we shall pass to the questions which seem to us controlling. The court withdrew defendant's claim of conspiracy, holding that there was no evidence thereof as to the bank. There was a conflict in the evidence as to whether defendant told plaintiff that it would be all right to buy the note, and this was properly submitted to the jury.

1. First, though, we think appellant's Assignments 5 and 11 are well taken. The court admitted evidence, and submitted to the jury the question as to representations and the character, quality, and value of the land owned and described in the contract, before plaintiff made an inspection, for the reason that defendant admits that he inspected the land and had learned of the representations with reference thereto that were made before he went to California, and that he knew of these facts when he consented to the substitution, and approved the modified contract and executed the writing before referred to as Exhibit B. The instructions submitted to the jury for their consideration the question as to the quality, character, and value of the land originally described in the contract, which, under the circumstances shown in the record, would have no bearing. Defendant had the right, under the contract, to reject the land originally described, and select other land, if he was not satisfied. He was not satisfied, and did consent to a substitution. We are unable to see, under these circumstances, what bearing the character of the land originally described can have on the questions properly in the case. As we view it, the turning point in the case is in regard to the effect of defendant's conduct and what was said and done when and after he made a personal inspection of the land originally described in the contract. We think the questions pleaded as to waiver and estoppel because of defendant's acceptance of other land were not submitted to the jury under appropriate and proper instructions. We are cited by appellant to the statute which provides that the court may render such a judgment as the trial court should have done, and we are asked to reverse the case, and to say as a matter of law

1. FRAUD: deception constituting waiver of fraud because of non-reliance.

that there was a waiver and estoppel, and to enter a judgment against defendant in this court. As a general rule, we are slow to do this in a law action which is reversed, but rather send it back for new trial, for the reasons that the issues and the evidence may be different on a retrial. In exceptional cases, where it is apparent that no different record can be made, final judgment is entered here.

2. After stating the issues as made by the pleadings, the court said to the jury that the theory of the defendant, as set out in his answer, is somewhat different from the theory upon which the case is submitted to them. The court then instructed that defendant had failed to establish any facts upon which could be predicated the finding that the plaintiff entered into a conspiracy with the land company, Lalor, or any other parties, and that there were no facts established from which a finding could be had that the bank was a party to or in any manner made the representations which were claimed by defendant to have been false, and upon which he claims he relied, and so relying, executed the contract and note for $4,000; and that the bank was not a party to or in any manner made the representation which defendant claims was relied upon by him and considered by him as to S. P. Lalor's financial condition, and which caused him, together with Lalor and Gerald Hayes, to execute the contract which we have before set out as Exhibit B, or to approve the contract as modified. The court then said that the questions submitted were: First, whether or not defendant was induced by parties other than the bank to execute the note for $4,000 by fraud, as alleged by defendant; and second, if he was so induced, whether or not plaintiff bank purchased the $4,000 note in due course.

The court, in its instructions, stated to the jury that the representations relied upon as having been made by the land company were, first, that arrangements had been made that any notes which were taken with and as a part of any contract which defendant might make, would be left for safe-keeping with plaintiff bank, until he examined and accepted the land; that the land company had and owned real estate in California, which was very valuable agricultural land. In the next in-

struction, the trial court withdrew the first of these alleged representations, because it was established by uncontradicted evidence that the two notes in suit were executed by the defendant to the bank, and that at that time defendant knew that the original $4,000 note had been sold by the Hayes Company to plaintiff, and notwithstanding that fact, he executed to the plaintiff the two notes in suit. The instruction stated that, as a matter of law, with this knowledge on the part of defendant, he waived his right to claim in this suit, as a basis of fraud, that said note had been sold, contrary to his alleged agreement. Defendant has not appealed, and cannot complain of any of the instructions.

3.   Twenty-nine instructions were given by the trial court. Several of them are very long. As said, it occurs to us that the turning point in the case is the effect of defendant's acceptance of the land, or substituted land. Indeed, in one sense, the whole case was, by the trial court's instructions, made to turn on that proposition, or more particularly the alleged representation by Lalor as to his financial standing. Appellee's argument on this point is very brief. The matter is referred to in two or three instructions, but more particularly in No. 18, which covers substantially two pages in the abstract. A part of that instruction follows:

2. BILLS AND NOTES: bona-fide purchasers: waiver of fraud and collateral agreement.

"If you find the defendant accepted and approved the contract as modified, and that he did the same upon his own judgment, after inspection of the lands in question and the land described in the contract as modified, and that such acceptance and approval on the part of the defendant was not done or induced by the representations which defendant alleges were made to him in Iowa by the land company, its agent or agents or representatives, with respect to the quality of the land; or if you find it established by the evidence that the defendant accepted and approved the contract as modified, on account of the contract signed by him and Lalor and Hayes (Exhibit B), then and in either event the defendant in law waived any right to claim that the representations made by the land company, its agent or agents, in Iowa, if such were made, were false and

fraudulent. And if you find that the defendant has so waived said representation as to the quality of the land, then the defendant's claim of fraud must fail, unless he has established by a preponderance of the evidence that his acceptance and approval of the contract as modified was done by him by reason of the representation of Lalor that he was worth a quarter of a million dollars, and that such statement on the part of Lalor was false and untrue, and known to said Lalor to be false and untrue at the time the same was made to the defendant, if made, and that the defendant relied upon such statement, and was deceived thereby, and that relying thereon he accepted and approved the contract as modified, and Exhibit B, and that he would not have approved and accepted the same had it not been for said fraud, if established. If defendant has established by a preponderance of the evidence that he accepted and approved the contract by reason of fraud in the inception of the contract, and would not have accepted and approved said contract but for such fraud, if any, but that thereafter he learned that said Lalor was not worth a quarter of a million dollars, and thereafter he forwarded money to the company for the purpose of operating said land under the cropping provision, then, and under that situation, if you have found that said money for cropping purposes was sent to said land company, after defendant knew, or in the exercise of ordinary care should have known, of the fraud practiced upon him, if any, in his acceptance and approval of the contract as modified, that you are instructed that by such act defendant waived his right to rely upon fraud which he alleges was practiced upon him by the false representation of Lalor as to his financial responsibility, and you will find for plaintiff, if it has so established such waiver on the part of defendant."

The matter is referred to in Instruction No. 11, to the effect that the ratification by defendant by the substitution of land would amount to a ratification of the $4,000 note and a waiver of his claim that there was fraud in the inception of the note, unless defendant has established that his ratification and approval of the contract were obtained by fraud in the representation as to the financial standing of Lalor. Instruction 11 fur-

ther reads, in part, that the fraud relied upon by defendant in securing his approval of the contract as modified was because "it was represented to him by the Daniel Hayes Co., by and through its agent or representative, that one S. P. Lalor was worth a quarter of a million dollars." And further, that, if said modification of the contract was secured by such fraud, then the ratification and approval of the contract would not be a waiver of his right to claim that there was fraud in the inception of the $4,000 note, as alleged.

We shall notice some of the reasons why we think these instructions were erroneous.

In the first place, the part last quoted above erroneously assumes, without evidence, that such representation as to Lalor's financial standing was made by the Daniel Hayes Company, through its agent, etc. The only claim as to such representation, as we understand it, is that it was made by Lalor himself; and there is nothing to show that it was made by the land company, or by Lalor for it or on its behalf. It is true, Lalor was and had been the agent of the land company, but the only purpose of Lalor's being there in California was to point out the land, so that there would be no mistake about it; and on the face of it, the contract, Exhibit B, purports to be a personal matter between defendant on the one hand and Lalor and Gerald Hayes on the other. At this point, appellant cites *Halligan v. Iowa Steam Laundry,* 170 Iowa 582, and it is claimed that the case holds that a principal is not bound by the personal promises or representations of his agent as to what he would individually do. Appellee cites *Ellison v. Stockton,* 185 Iowa 979, to the proposition that the principal is liable for the fraudulent act of his agent, in the course and within the scope of his employment, etc. As we understand the record, the alleged representation as to Lalor's worth was long after the transaction between the plaintiff and defendant, wherein plaintiff took the defendant's note or notes. Whether the said representation was ever brought to the knowledge of plaintiff or any of its officers before the notes were negotiated is extremely doubtful, under the evidence. At this time, defendant knew that his notes had been given to the bank, and

3. TRIAL: instructions: assumption of truth of material fact.

he knew it before he went to California; knew that the bank intended to use them; knew that they had been given for the original note, which the bank had taken from the land company. Plaintiff was not present or represented, or consulted with reference to the making of the contract Exhibit B, between defendant and Lalor, and had no voice in what defendant should do upon examination of the property. Although it may be true, as contended by appellee, that plaintiff had knowledge of the provisions of the original contract, defendant knew, and was bound to know, the provisions of his contract with the land company. Again, appellant contends that there is no competent evidence in the record to show that Lalor was not worth a quarter of a million dollars; that the only evidence on this subject is the testimony of two witnesses, hearsay, that they had been told that Lalor was not worth that. We understand this to be the record, and appellee has not pointed out to us in argument any different or further evidence on that subject. The evidence went in over proper objection. Again, it is not pleaded by the defendant that the land company or its agents represented that the substituted land was good agricultural land, etc. Neither is there any allegation in the answer that the land company or its agents represented to defendant that the title to the substituted lands was good. Defendant's case is based upon conspiracy and false representations. Evidence went in, to show that defendant knew of the character of the original tract, and after examination, rejected it. This being so, we are unable to see how any representations as to the character of that tract are material. Defendant had the right, under his contract, to reject the land, and he did so. As said, it is not pleaded that there was any false representation as to the substituted land. Evidence went in on that subject, and by the instructions the case was made to turn in part thereon. It should be kept in mind that, under the contract, the defendant's note was to be returned to him if, upon personal examination of the land, he was dissatisfied; and in that case, he had the right, if dissatisfied, to reject the land and demand his note and payments made by him, and look to the land company, after notice by defendant to it. Instead of complying with his contract and rejecting the

land, he chose, as he had a right to, under the contract, to select other land; and this was done. He says the substituted land looked all right, and he thought he could tell within a year; and so, instead of relying upon his contract with the land company, he entered into another arrangement with Lalor, by which Lalor personally agreed to take the land off his hands, at a certain price and within a certain time. It is quite clear that defendant relied upon the arrangement with Lalor, rather than on the provisions in his favor in the contract with the land company. The alleged representation as to Lalor's worth was doubtless with the thought on the part of defendant that, if Lalor was worth a quarter of a million dollars, he would be responsible for the performance of Exhibit B, and doubtless was considered by defendant as additional security, or a reason why he should rely, not upon the land company's contract and ability to perform and carry out Exhibit B, but upon Lalor's ability to do so, and as an inducement why he should take Lalor, under the contract Exhibit B, rather than rely upon his contract with the land company. He was not obliged to take such an agreement, or even other land. He had a right, under his contract, to reject all of it, and demand his money and notes back from the land company. This, we have no doubt, was the reason why he wanted a guaranty from Lalor that he, Lalor, could carry out the provisions of Exhibit B, and that he could tell within a year about the land. His original contract with the land company was for five years. We feel quite clear that, by Exhibit B, defendant entered into, and intended to enter into, an entirely different arrangement with Lalor. There is no allegation in the answer that defendant relied upon the contract between defendant and Lalor, Exhibit B, and that Lalor was not financially responsible to carry out its terms. The claim is that the land company was insolvent, at the time defendant signed the notes, and has been ever since, and that the company is unable to comply with the contract, either before or after the same was modified; and further,—and this seems to have been the theory adopted by the trial court,—that the alleged representation as to Lalor's worth was the cause of defendant's accepting the substituted land, and was itself a fraud by the land company, which

kept alive the original fraud alleged by defendant. It seems to us that the alleged representation that Lalor was worth a quarter of a million dollars is a long way from the negotiation of the note, and that, under all the circumstances in the case, it was not material. We think the trial court erred in the theory of the case, and in making the plaintiff's right to recover depend upon the alleged representation by Lalor. We may not have stated all the circumstances or reasons, but we have, in the main, referred to the points made by appellant in regard to this feature of the case which we think are well taken.

Appellant makes other objections to the instructions, and assigns other errors; but we shall not take the time to refer to them separately. For the errors pointed out, the cause is—*Reversed and remanded.*

STEVENS, C. J., and WEAVER, J., concur.

DE GRAFF, J.—I concur in the result, but would direct the trial court to enter judgment for plaintiff as prayed.